## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-mc-00031-PAB

Medicinal Wellness Center, LLC, a
Colorado limited liability company;
Medicinal Oasis, LLC, a Colorado limited
liability company; Michael Aragon, an
individual; Judy Aragon, an individual; and,
Steven Hickox, an individual,

Petitioners,

v.

UNITED STATES OF AMERICA,
through its agency the INTERNAL
REVENUE SERVICE,

Respondent.

_____

### AMENDED PETITION TO QUASH SUMMONSES
_____

PETITIONERS, Medicinal Wellness Center, LLC, a Colorado limited liability company,

Medicinal Oasis, LLC, a Colorado limited liability company, Michael Aragon, an individual,

Judy Aragon, an individual, and Steven Hickox, an individual, by and through their undersigned

attorneys, submit the following Amended Petition to Quash Summonses as follows:

Pursuant to Fed.R.Civ.P.15(a)(1)(B), this Amended Petition to Quash Summonses is

being filed as a matter of right within the time periods prescribed by Rule 15.

### CERTIFICATION REGARDING DUTY TO CONFER

Pursuant to Local Rule 7.1, below signed counsel hereby certifies that on February 13,

2018, prior to filing the Petition to Quash, he conferred with counsel for the Respondent.

Respondent's counsel responded that he objects to the relief sought. Given the numerous discussions that both parties have had, Petitioners' counsel believes that Respondent's counsel will also oppose the relief sought in this Amended Petition to Quash.

## STATEMENT WITH REGARD TO STANDING

The Petitioners are the Taxpayers that are the subject of the summonses at issue. The records being summonsed are purportedly that of the Taxpayers. As such, the Taxpayers have the right to petition to quash these third-party summonses. See *Gudenau v. United States,* 2006 U.S. Dist. LEXIS 79896. The Marijuana Enforcement Division of the Colorado Department of Revenue is a Third-Party Recordkeeper under Section 7609. Both the Federal Government and the State of Colorado have affirmed this fact. See Exhibit 1. The summonses at issue were served upon the Petitioners on January 24, 2018. See Exhibit 2. The Petitioners timely filed their Petition to Quash on February 13, 2018. The Petition was timely served upon the IRS Auditor and the Colorado Department of Revenue, Marijuana Enforcement Division by certified mail return receipt requested on February 13, 2018. The Petitioners have timely filed this Amended Petition to Quash within the time periods prescribed by Rule 15 on May 8, 2018.

## I.    INTRODUCTION

The Government alleges that the Petitioners have violated federal law – that they are unlawfully trafficking in marijuana. To this end, the Government, through the IRS, claims that Section 280E of the Tax Code is applicable. Section 280E disallows deductions to unlawful drug traffickers. Through these summonses, the Government seeks to establish the necessary elements of unlawful drug trafficking to apply Section 280E.

The Government has contended that it has the right and duty to share the same information obtained with the Department of Justice and other law enforcement agencies for criminal prosecution purposes. The Government makes general assertions that the Petitioners do not have sufficient evidence demonstrating this information sharing, but never outright denies that it is doing so. Also, the Government's actions are coming contemporaneously with Attorney General Jeff Sessions' rescinding of the *Cole* and *Ogden* memos – an indication that criminal prosecutions of the marijuana industry may be imminent.

As will be discussed further below, the petition to quash should be granted because:

- The summonses were not issued for a legitimate purpose because the IRS has not been given authority by Congress to investigate and administratively determine that a person has committed a nontax drug crime;

- The summonses are not relevant to any legitimate purpose;

- The continuation of the IRS's investigation into nontax drug crimes and resulting summonses without referral to the Justice Department violates the "good faith" standard under *Powell*;

- The IRS cannot compel taxpayer information about nontax crimes for tax purposes without a concurrent grant of immunity;

- IRC Section 280E is unconstitutional as violative of Fifth Amendment privilege and Fourth Amendment rights. As such, any investigation for the purpose of enforcing Section 280E is an improper purpose;

- The summonses violate the Petitioners' rights to privacy under the Fourth Amendment;

- The summonses issued to Medicinal Wellness Center's and Medicinal Oasis's owners are unreasonable and unenforceable because they are overbroad;

- The continuation of the IRS's investigation into nontax drug crimes and resulting summonses without referral to the Justice Department violates the "good faith" standard under *Powell*;

- The enforcement of the summonses against the State of Colorado would compel a person to commit a state law crime, and the Court should not use its powers to compel individuals to commit such criminal activity;

- The enforcement of the summonses against the State of Colorado would compel a person to commit a state law crime, and the Court should not use its powers to compel individuals to commit such criminal activity; and,

- The IRS cannot compel the State of Colorado to create reports which are not currently in existence.

- The requested transfer reports impermissibly seek the identity of other third-party taxpayers.

## II.   FACTS AND BACKGROUND

### A.  The Audit.

Petitioner Medicinal Wellness Center ("MWC"), is a Colorado limited liability company in good standing. On or about May 30, 2017, the auditor, Tyler Pringle, provided an "Information Document Request" ("IDR") to MWC for 2014 documents. See Exhibit 3. On or about July 27, 2017, Mr. Pringle issued a second and third IDR to MWC for additional 2014 documents, as well as 2015 documents. See Exhibits 4 and 5. On or about December 12, 2017, Mr. Pringle provided a fourth document request to MWC, requesting additional 2014 and 2015 documents. See Exhibit 6.  On or about December 27, 2017, Mr. Pringle issued a fifth document request to MWC requesting additional 2014 and 2015 documents, as well as 2016 documents. See Exhibit 7.

Petitioner Medicinal Oasis, LLC is a Colorado limited liability company in good standing. On or about August 21, 2017, Mr. Pringle provided an IDR to Medicinal Oasis for 2014 and 2015 documents. See Exhibit 8. On or about December 12, 2017, Mr. Pringle issued a fourth document request to Medicinal Oasis, requesting additional 2014 and 2015 documents. See Exhibit 9. On or about December 27, 2017, Mr. Pringle provided a third document request to Medicinal Oasis requesting additional 2014 and 2015 documents, as well as 2016 documents. See Exhibit 10.

Michael and Judy Aragon are individual taxpayers. On or about July 27, 2017, Mr. Pringle provided an IDR to the Aragons for 2014 and 2015 documents. See Exhibit 11. Mr. Pringle issued a second document request to Michael and Judy Aragon requesting 2016 documents on or about November 21, 2017. See Exhibit 12.

Steven Hickox is an individual taxpayer. On or about July 27, 2017, Mr. Pringle provided an IDR to Steven Hickox for 2015 documents. See Exhibit 13. On or about December 26, 2017, Mr. Pringle issued a second IDR to Mr. Hickox requesting 2014 documents. See Exhibit 14.

On or about October 6, 2017, Mr. Pringle issued a summons to the Colorado Department of Revenue, Marijuana Enforcement Division, for records relating to Medicinal Wellness Center, Medicinal Oasis, Michael Aragon, Judy Aragon, and Steve Hickox for the period of January 1, 2014 through December 31, 2015. See Exhibit 15. Petitioners filed a Petition to Quash those summonses on October 25, 2017 ("First Petition"). See *Medicinal Wellness Center, LLC v. United State*s, 1:17-mc-00170-PAB (D. Colo. 2017). The District Court has not issued a ruling on the First Petition as of the date of this filing.

Mr. Pringle subsequently issued a second set of summonses to the Colorado Department of Revenue, Marijuana Enforcement Division for records relating to Medicinal Wellness Center, Medicinal Oasis, Michael Aragon, Judy Aragon, and Steve Hickox for the period of January 1, 2016 through December 31, 2016. See Exhibit 2. Because the First Petition to Quash is still pending, and because these actions have common facts, claims, parties, attorneys, and Judge, this Amended Petition to Quash should be considered in tandem with Petitioner's First Petition. See Exhibit 22.

In the IDRs, Mr. Pringle repeatedly requested the Petitioners to obtain reports from the State of Colorado's METRC system. See Exhibits 3-10. The reports requested were the same as

demanded in the summons. See Exhibit 2. Mr. Pringle has not explained why these reports are relevant or why these third-party analytical reports are necessary for his examination. It is important to note, as discussed further below, METRC does not contain any financial information of substance. It is a plant tracking system. The only information the Government will receive through these summonses will be related to the alleged possession and distribution of marijuana.

There were discussions between Mr. Pringle and counsel for the Petitioners regarding the purpose of this audit. Mr. Pringle indicated that at least part of the audit was to determine whether the Petitioners were unlawfully trafficking in controlled substances to impose 26 U.S.C. §280E against Medicinal Wellness Center and Medicinal Oasis. Since the information Mr. Pringle seeks to obtain is the same information that could be used by the Department of Justice to "convict overwhelmingly" (possession and distribution of marijuana), the Petitioners requested that immunity be granted – first verbally and most recently in writing. See Exhibit 16. The IRS has the power to grant Petitioners immunity. See 18 USC §6004. However, Mr. Pringle has confirmed in writing that no immunity would be granted. See Exhibit 17.

Given the admission by the IRS that this audit is, at least in part, an investigation of whether the taxpayers violated federal criminal drug laws, and the fact that the Respondent is reserving all rights to prosecute, the Principals are fully asserting Fifth Amendment privilege. See Declaration of Judy Aragon, attached hereto.

**B.  The Summonses.**

In discussions with Petitioners' counsel, Mr. Pringle has been clear that the focus of his audit is to investigate whether the Petitioners were unlawfully trafficking in controlled substances to impose 26 U.S.C. §280E against Petitioners.

To investigate this alleged criminal activity, Mr. Pringle issued summonses to the Colorado Department of Revenue, Marijuana Enforcement Division ("MED"), requesting employees of the MED to create custom analytical reports based upon raw data purportedly provided by the Petitioners to the State. Specifically, Mr. Pringle is demanding that the State prepare the following analytical reports of the Taxpayers' raw data through its database known as *Marijuana Enforcement Tracking Reporting Compliance* system, commonly known as METRC:

- Copy of the METRC Annual Gross Sales Report for the taxable year ended December 31, 2016;

- Copy of the METRC Transfers Report for the taxable year ended December 31, 2016;

- Copy of the METRC Annual Harvest Report for the taxable year ended December 31, 2016;

- Copy of the METRC Monthly Plants Inventory Report for the taxable year ended December 31, 2016; and,

- Complete listing of all licenses held for the period of January 1, 2016 – December 31, 2016;

To this end, the IRS has converged on Colorado and is conducting mass audits of those it has determined to be unlawfully trafficking in controlled substances. The IRS is dishing out summonses like candy to establish that taxpayers are unlawfully trafficking in controlled substances. For example:

> The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA. The IRS then requested that Green Solution turn over documents and answer questions related to whether Green Solution is disqualified from taking credits and deductions under § 280E. It is undisputed the IRS has not made an assessment or begun collection proceedings.

*Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017). See also, *Futurevision, LTD v. United States,* 1:17-mc-00041-RBJ (D. Colo.) (IRS summonsing METRC claiming that the Petitioner unlawfully trafficked in a controlled substance.); *Nutritional*

*Elements v. United States,* 16-MC-0188-PAB (D. Colo.) (Same); *Nutritional Elements v. United States,* 17-mc-00052-RM (D. Colo.) (Same); *Colorado's Best, Inc. v. United States*, 1:17-mc-00154-RBJ (D. Colo.) (Same); *Green Solution, Inc. v. United States*, 1:16-mc-00137-PAB (D. Colo.) (Same); *Eric Speidell*, 1:16-mc-00162-PAB (D. Colo.) (Same); *Medicinal Wellness Center, LLC v. United State*s, 1:17-mc-00170-PAB (D. Colo.) (Same); *Rifle Remedies, LLC v. United States*, 1:17-mc-00062-RM (D. Colo.) (Same); *Standing Akimbo, LLC v. United States,* 1:17-mc-00169-WJM-KLM (D. Colo.) (Same); *CSW Consulting, Inc. v. United States*, 1:18-mc-00030-PAB; *High Desert Relief, Inc. v. United States*, 1:16-CV-469 MCA/SCY (D. N.M.) (IRS summonsing information from New Mexico Medical Cannabis Program claiming that the Petitioner unlawfully trafficked in a controlled substance.); *High Desert Relief, Inc. v. United States*, 1:16-CV-816 MCA/SCY (D. N.M.) (Same); and *Feinberg v. C.I.R.,* 808 F.3d 813 (10th Cir. 2015).

It is important to note that the IRS has not been forthcoming regarding the purpose of these audits. In fact, on or about January 29, 2018, the Petitioners filed requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, requesting information on the application of Section 280E. See Exhibit 23. Among the information requested, Petitioners sought:

> All written policy statements or other documents stating policy of the Internal Revenue Service, whether separately or jointly with and the Department of Justice, the Drug Enforcement Agency or any other Department or agency of the United States of America, regarding the policies to enforce or investigate the 26 U.S.C. §280E and/or the Controlled Substance Act , as it relates to the auditing of tax returns of taxpayers engaged in the sale of marijuana in states where such sales are legal under state law, whether for medicinal or recreational purposes.

Exhibit 23, Petitioners' FOIA Requests, pp, 2, 6, 10, and 14.

To date, Petitioners have not received responses to their FOIA requests. Thus, the Court should grant Petitioners an evidentiary hearing to determine the purpose of these summonses.

Despite the Government's assertion that it seeks the information solely to assess tax, the audit investigation and Section 280E are directed to an area "permeated with criminal statutes", towards a group "inherently suspect of criminal activities". *Marchetti v. United States,* 390 U.S. 39 (1968). As a result, the standard analysis of the regulatory tax system does not apply. This is because the IRS's investigation of inherently criminal activity poses a "constitutional difficulty" – sacrificing Fourth and Fifth Amendment rights when the information is compelled. When the

IRS attempts to use the tax power to engage in such investigative activity, there has been specific standards which have been developed. As will be discussed further below, the IRS summons does not meet the special standards for investigating those inherently suspect of criminal activities and must be quashed.

### C.  The METRC System.

METRC is a database tracking system used for marijuana regulatory compliance in the State of Colorado. See Exhibit 18. The Department of Revenue, Marijuana Enforcement Division ("MED") controls METRC. *Id.* Information regarding the tracking of marijuana plants is input into METRC so there can be a "traceable chain of custody" of the plants. *Id.* at 14. Those who are subject to the regulation must submit raw data to MED, which is placed into the METRC database. *Id.* Based upon this raw data "the regulatory body can use the reporting engine to build ad hoc reports based on their individual needs." *Id.*

It is important to note that there is no business, accounting, or financial information provided to METRC. C.R.S. §12-43.3-701 and CCRM 901-904 only require that the licensee's business information be located on the licensee's premises and be available for review by MED. The licensee's business, accounting and financial information is not input into METRC. METRC is for a completely different purpose – to trace the chain of custody of the plants. Accordingly, the only information the Government will receive through these summonses will be related to the alleged possession and distribution of marijuana.

Notably, this information is confidential. MED must:

Maintain the confidentiality of reports or other information obtained from a medical or retail licensee containing any individualized data, information, or records related to the licensee or its operation, including sales information, financial records, tax returns, credit reports, cultivation information, testing results, and security information and plans, or revealing any patient information, or any other records that are exempt from public inspection pursuant to state law.

C.R.S. § 12-43.3-202(d).

Moreover, disclosure of METRC information is a state-law crime:

> Any person who discloses confidential records or information in violation of the provisions of this article commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

C.R.S. §12-43.3-201(5).

A class 1 misdemeanor carries a penalty of up to eighteen months imprisonment and a five thousand dollar fine. C.R.S. 18-1.3-501.

There is no exception in the statutes allowing disclosure of METRC information to federal authorities. This makes sense given the current tension between federal and state law. Thus, if the Court orders MED to disclose this confidential information, one or more state employees will be compelled to commit a crime.

### D.  Background of Federal Criminal Drug Laws.

Federal laws prohibiting the possession and distribution of marijuana have been around since the 1930s. For purposes of this discussion, the relevant statutes begin with the *Narcotics Control Act.* On or about July 18, 1956, Congress passed the *Narcotics Control Act*. Public Law 728; - 84th Congress Chapter 629 - 2d Session H.R. 11619 All 70 Stat. 567 ("NCA"). The NCA penalized the possession and distribution of marijuana as well as taxed the possession thereof. *Id.*, Sec. 101. The NCA was made part of the Internal Revenue Code with the Department of Treasury/IRS being the agency in charge of its enforcement. *Id.*

In 1969, the Supreme Court in *Leary v. United States,* 395 U.S. 6 (1969) declared parts of the NCA unconstitutional. The Court was especially concerned that the NCA required disclosure of a criminal act (sale/possession of marijuana) to the IRS for tax purposes, but allowed for sharing of the same information for criminal prosecution purposes. *Id.* The *Leary* Court

discussed the Fifth Amendment "constitutional difficulty" of compelling a taxpayer to disclose facts of a federal crime for tax purposes, while allowing these same facts to be shared by the government for prosecution purposes. *Id.* at 26.

In response to *Leary*, Congress repealed the NCA and adopted the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("CSA"). Public Law 91-513, now codified in 21 U.S.C. §801, et seq. Congress adopted important provisions to comply with *Leary.* First, the jurisdiction of the Department of Treasury/IRS to investigate federal drug crimes was removed and given to the Attorney General and, by delegation, Department of Justice. See 21 U.S.C. §871. Second, the CSA precluded the Attorney General, and any of its delegates thereof, from obtaining financial records from the subjects of its investigation of violations of federal criminal drug laws. See 21 U.S.C. §880(b)(4). Congress further clarified that the Secretary of Treasury's only remaining authority over federal criminal drug laws is with respect to customs and import and export of drugs out of the country. See 21 U.S.C. §966. Thus, Congress created a "Chinese wall" between the IRS and the investigation of violations of federal criminal drug laws. This wall is an important component of the CSA to assure that the amended Tax Code and the CSA did not infringe on the "constitutional difficulty" expressly addressed by repeal of the NCA.

Similarly, in *Marchetti v. United States, supra.*, the Court found unconstitutional the Wagering Tax Act because the IRS could compel information of inherently criminal activity and share it with law enforcement. The Court noted that while Congress can tax such illegal activity, there are constitutional limitations:

> We are fully cognizant of the importance for the United States' various fiscal and regulatory functions of timely and accurate information (citation omitted); but other methods, entirely consistent with constitutional limitations, exist by which Congress may obtain such information.

*Marchetti v. United States,* 390 U.S. at 60.

The Supreme Court cited to *Counselman v. Hitchcock,* 142 U.S. 547 (1892) for its authority. In *Counselman*, the Supreme Court held that if Congress wishes to use its tax power to compel books and records, Congress must afford absolute immunity against future prosecution "for the offence to which the question relates." *Counselman*, 142 U.S. at 586. In this case, the "offense to which the question relates" is unlawful drug trafficking. Thus, absolute immunity from prosecution under federal criminal drug laws should be afforded to the Petitioners.

Congress corrected the constitutional difficulty by prohibiting IRS from sharing the incriminating evidence with law enforcement and provided absolute immunity from prosecution. See 26 U.S.C. § 4424; see also *United States v. Sahadi*, 555 F.2d 23 (2d Cir. 1977) (discussing the corrective actions taken by Congress to cure the constitutional difficulty in the wagering excise tax laws); see also, IRS Manual, Section 11.3.26 (limitations on use of wagering information). Without these protections, the IRS investigations create a "constitutional difficulty" of impermissible Fourth and Fifth Amendment violations. Since 280E provides no such constitutional protections, Section 280E is unconstitutional.

### E.  Section 280E.

Section 280E is very concise:

No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) **which is prohibited by Federal law or the law of any State in which such trade or business is conducted.**

26 U.S.C. §280E

The elements of Section 280E are: (1) person; (2) in the person's trade or business; (3) "traffics"; (4) in a Schedule I or II controlled substance; (5) prohibited by federal or state law.

26 U.S.C. § 280E. Thus, for Section 280E to apply, the taxpayer must have engaged in unlawful drug trafficking – a nontax crime. Since the sale of marijuana is lawful in Colorado, the unlawfulness would have to be found in federal law, e.g., the Controlled Substances Act, 18 U.S.C. §801, *et seq.* Section 280E is therefore only applicable to unlawful drug traffickers.

Historically, the application of Section 280E by the IRS came after a conviction of drug law violations. See, e.g., *Bender v. Comm.,* T.C. Memo 1985-375; *Sundel v. Comm.,* T.C. Memo 1998-78. However, the IRS became more aggressive after states began to make the sale of marijuana legal and the Justice Department declined to enforce federal marijuana laws. See Memorandum by David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice to Selected U.S. Att'ys (Oct. 19, 2009), revised by Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice (Aug. 29, 2013). By the time of *Feinberg v. C.I.R.,* 808 F.3d 813 (10th Cir. 2015), the IRS was in full swing of administratively determining that taxpayers selling state-legal marijuana were criminally culpable under federal law. For example:

> The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA.

*Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017).

At this time, the Government took the position that, given the Cole and Ogden memos, the taxpayer did not have to worry about prosecution based upon IRS investigations. Even then, the Court was skeptical:

> So it is the government simultaneously urged the court to take seriously its claim that the petitioners are violating federal criminal law and to discount the possibility that it would enforce federal criminal law.

*Feinberg, supra.*

Now, most recently, Attorney General Jeff Sessions has rescinded the Cole and Ogden memos, raising the distinct possibility that the Government will move forward on criminal

prosecutions against those in the marijuana industry. See Exhibit 19. So, it cannot be ignored that these summonses come at a time where the threat of criminal prosecution is real and potentially imminent.

Given the Government's assertion that the information summoned can and will be shared with federal law enforcement, the Court should take special care in determining the outcome of these petitions.

## III.    ARGUMENT

### A.  Standard of Review.

To be enforceable, a summons issued by the IRS must satisfy the standard set forth in *United States v. Powell*, 379 U.S. 48 (1964). See, e.g., *United States v. Balanced Fin. Mgmt., Inc.,* 769 F.2d 1440, 1444 (10th Cir. 1985). In *Powell*, the Court held that the IRS need not meet any standard of probable cause if the Commissioner can show that:

A.  The investigation will be conducted pursuant to a legitimate purpose;

B.  The inquiry may be relevant to the purpose;

C.  The information sought is not already within the Commissioner's possession; and,

D.  The administrative steps required by the Code have been followed – in particular, that the IRS, after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

See *Id.* (quoting *Powell,* 379 U.S. at 57-58).

Once the government makes a sufficient preliminary showing for enforcement under the *Powell* factors, the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be "an abuse of the court's process" or "on any appropriate ground." *United States v. Beacon Federal Sav. &*

*Loan*, 718 F.2d 49, 52 (2d Cir. 1983). See also *United States v. Powell*, 379 U.S. at 58, quoting

*Reisman v. Caplin*, 375 U.S. 440, 449. When a taxpayer does so, the court must go above and

beyond the *Powell* factors to decide whether to enforce a summons. *United States v. Beacon*

*Federal Sav. & Loan*, 718 F.2d at 52. Potential constitutional violations are issues which should

be addressed when considering enforcement of a summons. *Id.* at 53 (noting that the IRS, like all

other governmental agencies, must obey the Constitution).

Additionally, the IRS should not be allowed to use its summons power to conduct a

"fishing expedition" on the records of third parties only tangentially related to the finding of

taxpayer's income and expenses. *United States v. Coopers & Lybrand,* 550 F.2d 615, 619-20

(10th Cir. 1977). A summons should only be issued when: (1) the information required is vital to

the investigation; (2) the taxpayer or third-party summonee is unreasonably refusing to

cooperate; and (3) the information cannot be easily obtained from other sources. See, G.

SUMMONS AND ENFORCEMENT by George Johnson and Marvin Friedlander.

https://www.irs.gov/pub/irs-tege/eotopicg93.pdf. Defendants fail to meet these elements and the

elements set forth in *Powell.*

### B. The IRS Has Not Satisfied The Requirements Set Forth in *United States v. Powell.*

To enforce a summons, the IRS must show: (1) the investigation will be conducted

pursuant to a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the

information sought is not already within the Commissioner's possession; and, (4) the

administrative steps required by the Code have been followed – in particular, that the IRS, after

investigation, has determined the further examination to be necessary and has notified the

taxpayer in writing to that effect. *United States v. Powell*, 379 U.S. 48 (1964). As explained

below, the IRS has not satisfied this standard in the case at hand. Accordingly, the Court should not enforce the summonses.

    **1. The Summonses Were Not Issued for a Legitimate Purpose Because Congress Did Not Empower the IRS to Investigate Violations of Federal Criminal Drug Laws.**

As the *Powell* Court stated, the IRS summons must be for a legitimate purpose. If the summons is not for a legitimate purpose, e.g., if the subject of the investigation is beyond the agency's authority, the summons is not for a legitimate purpose and it must be quashed. *Burlington Northern Ry. Co. v. Office of Inspector General,* 983 F.2d 631, 641 (5th Cir. 1993).

In the circumstances here, it is clear that the purpose of these summonses is not to determine income or expenses, but to determine whether the Petitioners have violated the CSA in order to apply Section 280E. However, Section 280E contains no language authorizing the IRS to investigate or administratively determine that a taxpayer is unlawfully trafficking in a controlled substance. Thus, the IRS does not have the power to take those actions. If Congress wants to assign the executive branch discretion to administratively define criminal conduct, it must speak "distinctly." *United States v. Grimaud*, 220 U.S. 506, 519 (1911); *United States v. Eaton*, 144 U.S. 677, 688 (1892). This is because criminal statutes "are for courts, not for the Government, to construe." *Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014).

This clear-statement rule reinforces horizontal separation of powers in the same way that *Gregory v. Ashcroft*, 501 U.S. 452 (1991) reinforces vertical separation of powers. It compels Congress to legislate deliberately and explicitly before departing from the Constitution's traditional distribution of authority.

There has been no specific delegation of authority by Congress to the IRS to determine under what circumstances a taxpayer violates the CSA. It is completely absent in the Tax Code –

especially Section 280E. In fact, as discussed above, Congress took away the IRS authority to investigate and find violations of federal criminal drug laws to comply with *Leary*.

To conclude otherwise would seriously question the constitutionality of Section 280E. As discussed above, a tax statute which allows (1) the IRS to investigate and compel incriminating evidence of nontax crimes; (2) share the incriminating evidence with law enforcement; and (3) without a grant of absolute immunity, renders the statute invalid and unconstitutional. *Counselman, supra.; Marchetti, supra.; Leary, supra.* "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality". *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514 (1990); see also *United States v. Strandlof*, 667 F.3d 1146, 1154 (10th Cir. 2012) ("The Supreme Court requires [the Court] read an act of Congress narrowly, so as to avoid constitutional problems"). Giving the authority to the IRS to administratively investigate and determine nontax crimes would certainly jeopardize the constitutionality of Section 280E and should not be allowed.

Furthermore, the Government incorrectly asserts that the Court of Appeals in *Green Solution Retail v. United States,* 855 F.3d 1111 (10th Cir. 2017) gave the IRS authority to administratively investigate and determine violations of federal criminal drug laws. As the *Green Solution* court stated:

> To the extent Green Solution argues the IRS exceeded its authority under the Internal Revenue Code, we lack subject matter jurisdiction to consider the merits of the argument. We decide here ***only*** that the IRS's efforts to assess taxes based on the application of § 280E fall within the scope of the AIA. (Emphasis Added)

*Id.,* at n.8.

Allowing the IRS to obtain information in excess of its powers would violate the legitimate purpose requirement of *Powell*. *United States v. Powell*, 379 U.S. at 57-58. Because the summonses were not issued for a legitimate purpose – i.e., investigations of crimes outside

the tax code – the IRS must satisfy the probable cause standard. See generally *United States v. Powell*, 379 U.S. at 57-58. See also *Camara v. Municipal Court*, 387 U.S. 523 (1967).

Since Congress did not empower the IRS to investigate violations of federal criminal drug laws, the summonses are not issued for a legitimate purpose and should be quashed.

### 2.   The Summonses Are Not Relevant to Legitimate Purpose.

As stated above, the IRS does not have the authority to investigate whether a taxpayer has violated the CSA. To give the IRS this power would create the constitutional difficulty identified by the *Leary* Court.

The IRS may claim that it needs the requested information to determine the Petitioners' "income and expenses" for the tax years in question. However, the Government has already conceded that METRC information is not relevant to a determination of income and expenses as claimed by the IRS. In another case in which the undersigned is counsel of record, the IRS obtained the requested METRC information recently issued an assessment. In denying all expense deductions, the Revenue Agent states: "***METRC data does not track purchases other than tracking the amount of marijuana transferred in. This report only tracks the amounts, not the costs; therefore, there is no verification in METRC to support any COGS***." See Exhibit 24, emphasis added. Thus, the IRS has admitted that the METRC information is not relevant to a determination of income and expenses. Accordingly, the summonses for METRC information are not relevant to any legitimate purpose the IRS may put forth.

### 3.   The Investigation into Inherently Criminal Activity is Not in Good Faith.

The absence of a Justice Department referral is a statutory requirement for the issuance of a summons or the commencement of an enforcement action. See 26 U.S.C. § 7602(d). However, the IRS does not need to issue a referral to the Justice Department in order to share information

regarding nontax crimes. The IRS may disclose return information that may be evidence of a nontax federal crime to the Department of Justice in its discretion. See IRC §6103(i)(3)(A). The IRS is not acting in good faith by circumventing the requirement that a summons may not be enforced when there is a Justice Department referral in effect.

Moreover, there is an additional requirement for finding that the IRS is acting in good faith – that the "Service not abandon in an institutional sense . . . the pursuit of civil tax determination or collection." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 309 (1978); *United States v. Lamotte,* 2016 U.S. Dist. LEXIS 61704[1]. The Supreme Court has made clear that an improper purpose includes obtaining evidence when the IRS is seeking evidence of nontax crimes which can be used as evidence in a criminal prosecution. *Reisman v. Caplin,* 375 U.S. 440 (1964).

> To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power.

*United States v. O'Connor*, 118 F. Supp. 248, 251 (D. Mass. 1953).

The IRS continues to claim, in an institutional sense, that the Petitioners, as well as many others, are violating federal criminal drug laws by selling marijuana – and that Section 280E must therefore be investigated and applied. However, the Government does not explain why the IRS fails to refer the alleged "obvious" crimes to Department of Justice for prosecution, continues investigation, and then asserts that it has the right and duty to turn over the fruits of its investigation to law enforcement for prosecution of nontax crimes.

---

[1] The referral requirement dealt with the referral of tax fraud crimes and the Supreme Court's analysis of the civil and criminal components of tax fraud. See *LaSalle,* at 308. ("With regard to suspected fraud, these duties encompass enforcement of both civil and criminal statutes."). *Reisman, supra.,* analyzed the criminal investigatory powers of the IRS with respect to nontax crimes.

The IRS is not acting in good faith by alleging and investigating by means of summons inherently criminal activity but that may be shared with law enforcement but fail to officially refer the matters to the Department of Justice. *Reisman v. Caplin, supra., LaSalle*, *supra.* At that juncture, the IRS improperly becomes an information gathering agency for law enforcement. *Id.* This is especially so given the recent Memorandum by Attorney General Sessions rescinding the Cole and Ogden memos.

Given the lack of good faith by the IRS, the summonses should be quashed or not enforced.

### C. The IRS Should Not be Allowed to Investigate Nontax Crimes Without a Grant of Immunity.

As discussed above, the Supreme Court has made clear that the Government cannot use the tax power to compel books and records to determine nontax crimes without a grant of absolute immunity if that information can be shared with law enforcement agencies for prosecution purposes. *Counselman, supra.; Marchetti, supra.; Leary, supra.*

In this case, the IRS may share the incriminating evidence of drug trafficking with the Department of Justice in its discretion. See 26 U.S.C. §6013(i)(3). The Government's position is clear – it claims that it not only has the right but the duty to share the incriminating information with the Department of Justice that it obtains through these 280E audits and cannot agree to any limitation on use or immunity:

> [T]he IRS could not agree to such a condition, because I.R.C. § 6103(i) requires the IRS to turn over documents received from taxpayers to other federal agencies in certain circumstances.

Government Response Brief, *High Desert Relief v. United States,* 17-2083, p. 47 (also attached hereto as Exhibit 20).

So, the IRS simultaneously asserts that the investigation of violations of federal criminal drug laws is "strictly civil", but is compelled to share the same incriminating information to law enforcement for prosecution purposes. It is also clear that the government is reserving all rights to use this information in a nontax criminal prosecution. Petitioners requested that absolute immunity be granted. See Exhibit 16. Despite the fact that the IRS has the power to grant Petitioners immunity under 18 USC §6004, Mr. Pringle confirmed in writing that no immunity will be granted. See Exhibit 17.

Until immunity is granted, the Court should not grant the summonses to allow the IRS to obtain the allegedly incriminating information. Any constitutional reading of Section 280E would require immunity. Without immunity, any such investigation is conducted for an improper purpose.

**D. Section 280E is Unconstitutional as Violative of Fifth Amendment Privilege and Fourth Amendment Rights. As Such, Any Investigation for the Purpose of Enforcing Section 280E is an Improper Purpose.**

The Government contends that Section 280E gave the IRS the power to investigate nontax crimes for tax administration purposes because Section 280E disallows all deductions to those engaged in drug trafficking crimes. It cites 26 U.S.C. Sections 6201 and 280E for its authority. However, if 280E gives the IRS authority to investigate federal criminal drug law violations for tax administration purposes, Section 280E is in the crosshairs of unconstitutionality.

The Government concedes that pursuant to Section 280E, the IRS may compel the information from the taxpayer for federal criminal drug law crimes, and share the information with the Department of Justice or other law enforcement agencies. As above below, the Supreme Court has rejected such an ability to compel incriminating information for tax administration

purposes, and share. There is an impermissible "constitutional difficulty" to such a power. See *Leary v. United States,* 390 U.S. 6 (1969); *Marchetti v. United States,* 390 U.S. 39 (1969); *Grosso v. United States,* 390 U.S. 62 (1969); and *Haynes v. United States,* 390 U.S. 85 (1969).

Based upon the above cases, and as discussed further below, Section 280E is unconstitutional. In violation of the Fifth Amendment, the IRS is unconstitutionally allowed to compel information from the taxpayer in an area "permeated with criminal statutes." Section 280E contains no prohibitions in sharing the compelled incriminating information with law enforcement. Accordingly, Section 280E is unconstitutional.

### 1.   The Constitutional Difficulty.

Under *Leary* line of cases*,* the IRS may not investigate illegal drug trafficking activity absent constitutional protections. This is so when the IRS investigates an area "permeated with criminal statutes".

As the Government concedes, the IRS is investigating "illegal conduct for the purpose of determining the correct tax liability." The Government also concedes that Section 280E only applies to unlawful drug traffickers. The Government claims that since it administratively found the Petitioners are unlawful drug traffickers (they purportedly sold marijuana), it must impose Section 280E. The investigation and summonses are being done to further this purpose.

To this end*,* it is clear that the Government's investigation under Section 280E is "not asserted in an essentially noncriminal and regulatory area of inquiry [but is] in an area permeated with criminal statutes." *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965). Also, responses to the IRS's investigation of unlawful drug trafficking could require an "admission of a crucial element of a crime." *Id.* Thus, Section 280E raises the constitutional difficulty identified by the Supreme Court in *Leary*.

### 2.   The Elements of the Constitutional Difficulty.

The first element of the constitutional difficulty arises when the IRS can use its tax power to investigate and compel books and records in "an area permeated with criminal statutes," against taxpayers who are "inherently suspect of criminal activities." *Marchetti v. United States*, 390 U.S. at 47.

Unlawful trafficking of marijuana is such an area. *Fla. Dep't of Revenue v. Herre*, 935 So. 2d 536 (Fl. S.Ct. 1994). In determining a state statute taxing illegal drug trafficking was unconstitutional, the Florida Supreme Court stated:

> "Section 212.0505 taxes those persons who illegally traffic in marijuana and other controlled substances, and, therefore, it satisfies the *Marchetti* limitation that the statute be directed to a "selective group inherently suspect of criminal activities."

*Herre,* 935 So. 2d at 620.

Section 280E likewise only applies to persons who are engaging in illegal drug trafficking – in this case the alleged unlawful sale of marijuana. Thus, Section 280E satisfies the *Marchetti* limitation that the statute be directed to a "selective group inherently suspect of criminal activities."

The second element of the Constitutional difficulty is that the statutory tax scheme requires taxpayers to disclose information they "might reasonably suppose would be available to prosecuting authorities." *Marchetti*, 390 U.S. at 48. This element of the constitutional difficulty is also present here. As it was in *Leary, Grosso, Marchetti, and Haynes, supra.,* the information obtained by the IRS as a consequence of its investigation "is readily available" to assist the efforts of federal law enforcement authorities.

In *Herre,* the Florida Supreme Court found this element of the constitutional difficulty violated when the statute allowed the taxing authorities to provide the incriminating information

"to state and federal law enforcement officials as long as those officials present a subpoena." *Herre,* 935 So. 2d at 620. Thus, "[i]n violation of one of the principles established in *Marchetti,* Florida's statutory scheme requires taxpayers to disclose information they 'might reasonably suppose would be available to prosecuting authorities.'" *Herre,* 935 So. 2d at 620-621.

Likewise, under Section 280E, incriminating evidence is being summonsed by the IRS, e.g., METRC. Clearly, the Taxpayers "might reasonably suppose [the information] would be available to prosecuting authorities". *Id.* at 619. This is especially so given the fact that the IRS has been unwilling to grant immunity and has asserted that it has the duty to share this information with law enforcement.

The Government may contend that there is nothing on the federal tax return forms that compels the taxpayer to provide incriminating evidence. This is not the case. Federal tax returns must be signed by an individual under penalty of perjury. 26 U.S.C. §7206. Section 280E provides that a taxpayer cannot take *any* "below the line" deductions if the taxpayer is engaged in unlawful drug trafficking. Unlawful drug trafficking is the only business that has such a restriction in the Tax Code. All other business, lawful and unlawful, have "reasonable and necessary" business expenses, such as rent, salaries, taxes, depreciation, and utilities which may be deducted under IRC Section 162. Unlawful drug traffickers are the only business taxpayers who will file a return with no "below the line" deductions. Of course, the corresponding tax rate increases tremendously. Thus, one simple step of deductive reasoning in reviewing the return (no below the line deductions) will reveal that the taxpayer is engaged in unlawful drug trafficking activity. This is a "link in the chain" of incriminating evidence against the taxpayer.

The Florida Supreme Court followed the same analysis in a similar setting:

"Because the form does not require disclosure of the taxpayer's occupation or the nature of his business, the Department contends that the form does not require the

> taxpayer to differentiate between legal and illegal transactions. However, the fifty percent tax rate is only applied to those engaged in illegal activities, while the standard six percent sales tax rate is applied to all other transactions.  Thus, one simple step of deductive reasoning would reveal that if a taxpayer collects $ 100,000 in gross sales and pays $ 50,000 in sales tax, the tax clearly is being paid on an illegal drug sale. The taxpayer's signature on the form, which serves as an admission that the taxpayer has participated in criminal activity, provides a link in the chain of incriminating evidence against him."

*Herre,* 935 So. 2d at 620.

### 3.   The Danger of Using the Tax Power to Investigate Nontax Crimes.

As way of background, the federal courts have generally provided a relaxed standard of Fourth and Fifth Amendment protections when faced with a tax power investigation. See, e.g., *United States v. Powell*, 379 U.S. 48 (1964) (No probable cause necessary for searches under the tax summons power); *United States v. Lehman*, 468 F.2d 93 (7th Cir. 1972) (Miranda warnings unnecessary in criminal tax investigations, but tax agents may not by fraud or deceit misrepresent that the interview is strictly civil). However, unchecked, great abuses of Fourth and Fifth Amendment rights would occur if the tax power is used to investigate nontax crimes. This is where the constitutional difficulty lies.

If the IRS is allowed to use the tax power to investigate nontax crimes for tax administration purposes, basic constitutional rights would be infringed. Since the IRS asks for the power to investigate an area permeated with criminal statutes, the request must be analyzed by the necessary constitutional limitations. Thus, if Congress delegates its tax power to allow the IRS to investigate inherently criminal activity for tax administration purposes, it must either prohibit the IRS from sharing the incriminating information with law enforcement, or provide absolute immunity from prosecution. Section 280E does neither.

The METRC information sought by is clearly information which may be used to incriminate in a criminal proceeding, and could be readily used to incriminate the Principals of

Medicinal Wellness Center and Medicinal Oasis. This incriminating information may be shared by IRS with law enforcement. See 26 U.S.C. Section 6103(i)(3)(A)(i) ("[T]he Secretary may disclose in writing return information (other than taxpayer return information) which may constitute evidence of a violation of any Federal criminal law (not involving tax administration) to the extent necessary to apprise the head of the appropriate Federal agency charged with the responsibility of enforcing such law"). In fact, in other proceedings, the Government has strongly defended the right to share the incriminating information obtained with law enforcement.

Under Section 280E, the tax power can be used to compel incriminating information and share with law enforcement. Law enforcement would not have access to this information absent full compliance with the Fourth and Fifth Amendments. Thus, the use of the tax power to compel the information would operate as an end run around the Fourth and Fifth Amendment. Constitutional rights may not be eroded by "ingeniously drawn legislation". *Marchetti v. United States,* 390 U.S. at 52.

Given that Section 280E allows the IRS to investigate violations of federal criminal drug laws, and does not prohibit the sharing of the incriminating information with law enforcement, Section 280E is unconstitutional. Because any investigation pursuant to an unconstitutional law would be an improper purpose under *Powell*, the summonses should be quashed.

### E. The Summonses Compel Information for Which There is a Reasonable Expectation of Privacy in Violation of the Fourth Amendment.

As discussed above, any information provided to MED by the Petitioners is confidential. It is a state law crime to disclose this information. Thus, the Petitioners have a reasonable expectation of privacy to the information (assuming it does exist), and are privileged. Fed.R.Evid. 501; *Judd v. Cedar St. Venture*, 256 P.3d 687, 691 (Colo. 2011); see also *Jaffee v. Redmond*, 518 U.S. 1 (1996) (A rule that authorizes the recognition of new privileges on a case-

by-case basis makes it appropriate to define the details of new privileges in a like manner.) Additionally, seeking information of non-tax crimes requires a warrant and a finding of probable cause. Therefore, the Fourth Amendment prohibits disclosure of the summonsed information.

## 1. The Information Compelled Is Privileged and Private.

Potential Fourth Amendment violations are an issue which should be addressed when considering enforcement of a summons. *United States v. Beacon Federal Sav. & Loan*, 718 F.2d at 53. If granting enforcement of a summons results in an unconstitutional search, the summons should not be enforced. "[T]he court would be furthering the effects of, if not actually encouraging, unconstitutional conduct and that by doing so, the taxpayer may suffer from the unconstitutional conduct in ways that cannot later be remedied." *Id*. at 54.

In the instant case, the government is attempting to obtain control of Petitioners' private data purportedly contained in the MED database. The information allegedly provided by the Petitioners to MED is confidential and statutorily protected from disclosure.

The Fourth Amendment protects people from unreasonable searches and seizures of property, including data[2] of persons and objects, in which they have a subjective expectation of privacy that is deemed reasonable in public norms. *U. S. Const. amend. IV*. Using the two-prong expectation of privacy test developed in *Katz v. United States*, 88 S.Ct. 507 (1967), a person must have exhibited an actual expectation of privacy and the expectation must be one that society in general would recognize as reasonable. If these requirements are both met, then Fourth Amendment procedural protections apply.

A person has a subjective expectation of privacy if the person can show that the information sought was kept in a manner to conceal it from the public. *Id.* In the instant case, the

---

[2] Data is considered property for Fourth Amendment purposes. *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162 (9th Cir. 2008).

Colorado Revised Statutes compel those who are subject to the regulation to submit plant tracking information to MED, which is placed into the METRC database to allow MED to follow the chain of custody of the plants. C.R.S. 12-43.4.202(1)(h). The licensees do not voluntarily give this information; rather, those subject to the regulations face state criminal penalties for failure to report to the MED. Further, C.R.S. 12-43.4.202(1)(d) provides that the MED must maintain the confidentiality of reports or other information obtained from a licensee. Finally, C.R.S. 12-43.3-210(5) provides: "Any person who discloses confidential records or information in violation of the provisions of this article commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S." Thus, the Petitioners have an expectation of privacy in their data.

The second part of the test asks whether society at large would deem a person's expectation of privacy to be reasonable. *Katz, supra.* Here, the information sought is kept in a manner where one would reasonably expect lack of public access. Moreover, the Colorado legislature has safeguarded taxpayers' privacy through the above-mentioned statutes. Therefore, Petitioners have a reasonable expectation of privacy.

## 2.   Seeking Information of Nontax Crimes Requires a Warrant and a Finding of Probable Cause.

The Fourth Amendment states: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U. S. Const. amend. IV*. However, the Fourth Amendment protections are relaxed with respect to tax administration in order to ensure compliance with the revenue laws. See generally *Powell, supra.* See also *United States v. Roundtree*, 420 F.2d 845, 850 (5th Cir. 1969).

If the IRS was simply seeking information regarding income, expenses, or even tax fraud, the relaxed standard would apply. However, the IRS is searching for documents supporting nontax crimes – the distribution or sale of marijuana. Therefore, in this context, "a summons submitted to a court for enforcement is at least equivalent to a search warrant." *Id.* Accordingly, the Fourth Amendment protections apply.

Since the IRS is seeking information of nontax crimes, the IRS will need to seek a warrant and not merely a summons to obtain this information.

> "*Powell* did not explicitly consider constitutional limitations on the Commissioner's power. But in our view, *Camara v. Municipal Court*, 1967, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930, and *See v. City of Seattle*, 1967, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943, two recent fourth amendment decisions, compel no different result. In those two cases the Court set out to "reexamine whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights". 387 U.S. at 525, 87 S. Ct. at 1729. The Supreme Court in *Camara* found that the fourth amendment's basic purpose is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials". 387 U.S. at 528, 87 S. Ct. at 1730. The use of a search warrant is necessary, the Court ruled, even in a case where the state court had found that the search was "'part of a regulatory scheme which is essentially civil rather than criminal in nature, * * * [and the] right of inspection * * * is limited in scope and may not be exercised under unreasonable conditions'". 387 U.S. at 528, 87 S. Ct. at 1730."

*Id.* at 849 (5th Cir. 1969).

Thus, for the IRS to compel the information of inherently criminal nontax activity, it must obtain a warrant.

Given that the Petitioners have a reasonable expectation of privacy and the IRS has not obtained a warrant, the court should not enforce the summons and allow the IRS to access information in a way that will allow the IRS to violate the Petitioners' Fourth Amendment rights.

**F. The Summonses Issued to Medicinal Wellness Center's Owners are Unreasonable and Unenforceable Because They Are Overbroad.**

It is well established that "[a] summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the ends sought." *United States v. Coopers & Lybrand,* 550 F.2d 615, 621 (10th Cir. 1977), citing *United States v. Harrin*gton, 388 F.2d 520, 523 (2d Cir. 1968). The IRS may not use its summons power to conduct a "fishing expedition" on the records of third parties only tangentially related to the finding of taxpayer's income and expenses. *United States v. Coopers & Lybrand,* 550 F.2d at 619-20.

Although the IRS has broad investigatory powers under 26 U.S.C. § 7602, taxpayers are afforded a substantial protection by the requirement in 26 U.S.C. § 7604 that IRS summonses be enforced by the courts. *Id.* at 620, citing *United States v. Bisceglia*, 420 U.S. 141, 143 (1975); see also, *Reisman v. Caplin*, 375 U.S. 440, 445-46 (1964). As the *Harrington* court emphasized, the "judicial protection against the sweeping or irrelevant order is *particularly* appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have some dealings with the person under investigation." *United States v. Coopers & Lybrand*, 550 F.2d at 621 (emphasis added), citing *United States v. Harrington*, 388 F.2d at 523.

In the instant case, the IRS is asking this Court to enforce an overbroad summons. Specifically, the summonses issued to the MED seek a complete listing of all licenses held by Medicinal Wellness Center's owners for the tax period ended in December 31, 2016. However, this request goes way beyond assessing the tax liability of MWC and Medicinal Oasis – it asks for all licenses of any entity. The Government does not explain why it needs licenses of outside that of Medicinal Wellness Center and Medicinal Oasis.

Given the above, these summonses are overly broad and should not be enforced.

### G. The Court Should Not Use its Power to Compel Individuals to Commit a State Law Crime.

As explained above, the information allegedly provided by the Petitioners to the MED is confidential and statutorily protected from disclosure. C.R.S. 12-43.3-202(d). In fact, the disclosure of the information sought will be a Colorado state-law crime, punishable by both fine and imprisonment. C.R.S. 12-43.3-201(5). Since the state government necessarily operates through individuals, this means that one or more person would have to commit criminal activity if the Court compels disclosure of the data. Thus, the IRS seeks this Court to compel state-employee individuals to commit a state-law crime by disclosing this information.

The Court should be wary of using its powers to compel a state crime. See *Younger v. Harris*, 401 U.S. 37 (1971); *United States v. Barone*, 781 F. Supp. 1072 (E.D. PA 1991) (Under principles of comity, absent exceptional circumstances, the court should refrain from enjoining criminal prosecutions of state law crimes). Thus, the Court should refrain from compelling the disclosure of the MED data.

### H. The IRS's Summons Power Does Not Extend to Forcing a Party to Prepare or Create Documents.

In the summonses at issue, the "reports" the IRS is demanding are not documents that were created by the Petitioners. See Declaration of Judy Aragon, attached hereto. Petitioners do not believe that these documents are created in the normal course of business by the State. Moreover, there is no evidence that these analytical reports were created by the State during the relevant time. The IRS has the burden to prove that the "reports" were in existence on the date the summons was issued. However, the IRS can present no evidence that the reports requested currently exist.  Rather, the reports summonsed are analytical reports which the IRS seeks to have the State create.

The IRS's summons power does not extend to forcing the preparation or creation of documents. *United States v. Davey*, 543 F.2d 996, 1000 (2d Cir. 1976) (The IRS's summons power under "§7602 does not require preparation or production of records not yet in existence".); see also Internal Revenue Manual, 5.17.6.1.3 ("A summons cannot require a witness to prepare or create documents, including tax returns, that do not currently exist."). "We wish to emphasize that the burdens of production and proof on the questions of the existence, possession, and authenticity of the summoned documents are on the Government, not the taxpayer." *United States v. Rue*, 819 F.2d 1488, 1493 n.4 (8th Cir. 1987). Furthermore, the date of the service of the summons is the date used to determine the existence of the documents for this inquiry. *Id.* at 1493; see also, *United States v. Greenfield*, 831 F.3d 106, 124 (2d Cir. 2016) (quoting *Rue* "The relevant date on which existence and possession of the documents must be shown is the date on which the IRS summons is served, for it is at that time that the rights and obligations of the parties become fixed").

In his order, issued on October 26, 2017, Judge Moore addresses this precise issue:

> Petitioner's next argument, again to the extent it is an illegitimate purpose argument, is that the IRS is seeking to force MED to create reports that do not otherwise exist. (See ECF No. 20 at 13-14.) In reply, respondent asserts that it is simply summoning MED to print "specific reports" from a database of information MED already possesses. (ECF No. 21 at 4-5.)

> Put simply, the summons requests what the summons requests. Should the items requested exist and be in MED's possession, then MED should be expected to produce that which has been requested. To take the analogy used by respondent, should MED possess something akin to a bank statement (*see* ECF No. 21 at 4)— i.e., something which is produced by a bank as a matter of course with respect to an account holder—containing the information respondent seeks, then compliance with the summons should be expected. If, however, the summons should require MED to produce a report that it would not ordinarily or otherwise produce from its database of information, then respondent very well may find itself having to process that information itself. In other words, in such a situation, MED may only need to produce the entirety of the database of information because that is the only document or data source that MED has created and possesses. Merely

> because MED could produce a report from its database does not mean that it has
> or that respondent can force MED to do so. *See United States v. Euge*, 444 U.S.
> 707, 717 n.11, 100 S.Ct. 874 (1980) (noting that, although the IRS had authority
> to seek handwriting exemplars, the Supreme Court expressed "no opinion on the
> scope of the [IRS'] authority to otherwise order [a] witness to generate previously
> nonexistent documentation").

See Exhibit 21, pg. 4. *Rifle Remedies, LLC v. USA,* Case No. 1:17-mc-00062-RM, United States District Court for the District of Colorado.

The Government may try to state that the reports are like bank records which can be summonsed even though they may be in electronic form. However, this is not the case. Bank statements, signature cards and the like are documents which are created by the bank in the ordinary course of business and simply stored electronically. These pre-existing documents are simply being transmitted in the event they are summonsed. In his order issued October 26, 2017 Judge Moore again addresses this exact issue:

> Again using respondent's analogy, merely because a bank may produce a bank
> statement for an account holder does not mean that the bank must perform a
> search through the data therein to produce a different set of information, at least
> not when the bank would not ordinarily or otherwise do so. Rather, it would
> appear to be the IRS' responsibility to sort through the produced bank statement
> to obtain that which it is looking for.

See Exhibit 21, pg. 5, footnote 2. *Rifle Remedies, LLC v. USA,* Case No. 1:17-mc-00062-RM, United States District Court for the District of Colorado.

 In this case, the Government wants analytical reports created from raw data that are not known to be made in the ordinary course of business. Since the reports are not currently in existence (neither now nor on the date of the summons), the Government cannot compel the creation of these "reports".

While it may be helpful to the IRS to have the State create analytical research for the IRS's use and pleasure, it is beyond the power of the IRS to force the creation of these documents. *Id.* This is true, even though the IRS believes, based upon agents' training, that the

METRC database engine can create the analytical reports. The power to force the creation of the analytical reports is not there.

### I. The Requested Transfer Reports Impermissibly Seek the Identity of Other Third-Party Taxpayers.

The IRS is summonsing "Transfer Reports" from MED. It is unknown what specifically the IRS is seeking, and the IRS does little to clarify, but it appears to be requesting the identity of third parties who may have dealt with the Petitioners in the past. The IRS does not explain how the identity of these other third parties will help in this audit. However, seeking the identity of other unknown third parties who may have dealt with the Petitioners is not a proper purpose of these summonses.

In order to obtain the identities of these third parties, the IRS must comply with the provisions of 26 USC 7609(f) regarding John Doe summonses. In particular, the IRS must show:

1) The summons relates to the investigation of a particular person or ascertainable group or class of persons;

2) There is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law; and,

3) The information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f)

The IRS has not demonstrated any of the above to be present in this case. Thus, the IRS should not be allowed to obtain a "transfer report" listing of other third parties for which the Petitioners may have dealt.

IV.    **CONCLUSION**

Given the above, the Respondent's Summonses should be Quashed.

<u>**RELIEF REQUESTED**</u>

**WHEREFORE,** Petitioners request the following relief in their favor:

a)   An order quashing the Summonses, attached as Exhibit 2; or,

b)   An order scheduling an evidentiary hearing to determine if the IRS has satisfied the *Powell* standard for enforcement of the Summons; and,

c)   For such other relief as the Court deems just and proper.

**DATED**: May 8, 2018

Respectfully submitted,

THORBURN WALKER LLC

*/s/ James D. Thorburn*
James D. Thorburn
Attorney for the Petitioners
5460 South Quebec Street, Suite 310
Greenwood Village, CO 80111
(303) 646-3482
jthorburn@thorburnwalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2018, I electronically filed the above and foregoing using the CM/ECF system which will send notification to the following email address:

Charles J. Butler
Trial Attorney, Tax Division
U. S. Department of Justice
P.O. Box 683
Washington, DC 20044

s/ James D. Thorburn