**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-mc-00031-PAB

Medicinal Wellness Center, LLC, a
Colorado limited liability company;
Medicinal Oasis, LLC, a Colorado limited
liability company; Michael Aragon, an
individual; Judy Aragon, an individual;
Steven Hickox, an individual,

Petitioners,

v.

UNITED STATES OF AMERICA,
through its agency the INTERNAL
REVENUE SERVICE,

Respondent.

---

**PETITIONERS' RESPONSE TO RESPONDENT'S MOTION TO DISMISS PETITION
AND ENFORCE SUMMONSES**

---

PETITIONERS, Medicinal Wellness Center, LLC, a Colorado limited liability company, Medicinal Oasis, LLC, a Colorado limited liability company, Michael Aragon, an individual, Judy Aragon, an individual, and Steven Hickox, an individual, by and through their undersigned attorneys, submit the following response to Respondent's Motion to Dismiss:

**INCORPORATION BY REFERENCE**

The Petitioners incorporate by reference their Amended Petition to Quash Summonses, the Declaration of Judy Aragon, and all exhibits attached thereto. The Amended Petition sets forth the arguments of the Petitioners. Rather than repeating the arguments, this Response will

be more in the form of a Reply touching upon the main points where the Petitioners believe the Government has brought in new material.

A.	Standard of Review.

1.	General Standard Issues.

The Respondent claims that its Motion to Dismiss ("MTD") is pursuant to Fed.R.Civ.P. 12(b)(6). However, the Respondent submitted a declaration in support of its motions from auditor Tyler Pringle. Given this declaration, as well as other references to extraneous facts and records outside the pleadings, the Respondent's motion must be considered a Motion for Summary Judgement, pursuant to Fed. Civ. R. 56. Petitioners submit both standards of review under all rules, but under any standard adopted by the Court, the MTD's should be denied.

It is important to note that the Respondent did not state the standard of review in its motion for enforcement of the summons against the State of Colorado. At the very minimum, the standard of review should be one of summary judgment.

As a general proposition of the standard the Supreme Court stated:

> The balance we have struck in prior cases comports with the following rule, applicable here: As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. ***But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available.*** And although bare assertion or conjecture is not enough, ***neither is a fleshed out case demanded***: ***The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive.*** That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing. (Emphasis Added)

*United States v. Clarke,* 134 S. Ct. 2361, 2367-68 (2014).

2. **Fed. R. Civ. P. 56.**

"The court shall grant summary judgment if the movant [Respondent] shows there is no genuine dispute as to any material fact, the movant is entitled to judgment as a matter of law". In reviewing the record, all factual inferences must be drawn in favor of the party opposing summary judgment [Petitioner]. *Stover v. Martinez*, 382 F. 3d 1064, 1070 (10th Cir. 2004); *Reynolds v. School Dist No. 1*, 69 F.3d 1523, 1531 (10th Cir.1995). Thus, all the factual inferences of the numerous governmental allegations of the Petitioners (and many others) violating federal criminal drug laws, and the Government's seeking information constituting "a link in the chain" to those crimes have to be drawn in favor of the Petitioners.

The Respondent will assert that it enjoys a relaxed standard on summary judgment, and that the Court can review the Respondent's allegations at face value and ignore any facts submitted by the Petitioners. However, this is not the case. The Respondent can make the *prima facia* case by alleging the *Powell* standards are satisfied. However, the rebuttal showing "does not demand that the taxpayer conclusively give the lie to the prima facie case, but only that she create a 'substantial question in the court's mind regarding the validity of the government's purpose.'" *United States v. Gertner*, 65 F.3d 963, 967 (1st Cir. 1995). Ultimately, even though the burden of production may shift to the taxpayer in the second tier, the burden of persuasion always will be with the Respondent. *Id., see also Fed.R.Evid. 301*.

3. **Fed. R. Civ. P. 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential

3

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation is a two-step analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

**B.     The Investigation of Violations of Federal Criminal Drug Laws**

The auditor, Tyler Pringle, conducted an initial investigation into the Petitioners to determine their culpability under federal criminal drug laws. His initial investigation included reviewing the purported website of the Petitioner. See Declaration of Tyler Pringle [Doc. 15-1]. After this initial investigation, Mr. Pringle concluded that the Petitioners, including the individuals, had unlawfully trafficked in federally controlled substances. To this end, Mr. Pringle sought to impose Section 280E of the Tax Code against the Petitioners. While Mr.

4

Pringle claims that there is no referral to the Department of Justice in effect, he is silent of whether the information he is obtaining is being shared with the Department of Justice or the Grand Jury for criminal prosecution purposes. The IRS is fully defending the right to share this information with law enforcement.

As the Court is aware, there are numerous summons matters pending in this Court, all which follow the same path. The Government contends that those under investigation have violated federal criminal drug laws and that it needs the information of the criminal activity for tax administration purposes. Inexplicably, in none of these many cases and taxpayers, has there been a single alleged referral of the federal drug crimes to the Department of Justice. Why? The answer to this question goes directly to the question of the IRS's good faith. It seems implausible that the IRS on the one hand would assert on numerous occasions that the taxpayers are violating federal criminal drug laws, but, on the other hand, fail to refer the information to law enforcement for prosecution. This is sufficient circumstantial evidence to allow the Petitioners to examine the IRS agent on the good faith. *Clark, supra.*

The Government is also completely silent on whether there are criminal investigations pending and this information is being shared with DOJ without a referral under 26 U.S.C. 6103.[1] There are too many of these investigations and summonses pending for the Government to disclaim any policy in this regard. The Supreme Court has made very clear "the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases."

---

[1] The Petitioners have filed a FOIA action in the U.S. District Court for the District of Colorado attempting to obtain this information. See *MWC, et al v. United States,* 1:18-cv-00949-MJW. Thus, far the IRS through FOIA requests have steadfastly refused to provide any information regarding its policies, the Internal Revenue Manual, regarding Section 280E, or any information regarding its interaction witht eh Department of Justice on these audits.

*United States v. La Salle Nat'l Bank*, 437 U.S. 298, 3[2]17, 98 S. Ct. 2357, 2368 (1978).  Before any more summonses are granted by the Court for MED records, this question needs to be addressed.  The Government needs to explain the necessity for all the numerous investigations and demands for incriminating evidence.

**C.     There is a Hazard of Self-Incrimination.**

Amazingly, the Government claims that the Petitioners have no concrete hazard of self-incrimination despite the Government's simultaneous assertion that the Petitioners have violated federal criminal drug laws.  Justice Gorsuch made short work of that argument:

> "So it is the government simultaneously urged the court to take seriously its claim that the petitioners are violating federal criminal law and to discount the possibility that it would enforce federal criminal law."

*Feinberg v. C.I.R.*, 808 F.3d 813, 815 (10th Cir. 2015)[3, 4]

The Government contends that the *Leary* line of cases only disapproves of tax forms which compel incriminating evidence.  This is not the case.  For example, with regard to unlawful gambling, Congress necessarily had to adopt 26 U.S.C. Section 4424, prohibiting the IRS from sharing any incriminating information with law enforcement it obtained during *any* part of its tax administration with unlawful gamblers.  See also, *United States v. One Coin-Operated Gaming Device*, 648 F.2d 1297 (10th Cir. 1982) (Tax statute unconstitutional when taxpayer is compelled "to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt").  The Government, here, is attempting to use IRC

---

[3] The Government incorrectly asserts that Justice Gorsuch approved of the Tax Court's determination to deny the protective order.  Justice Gorsuch only concluded that the issue could not be decided on mandamus.  During oral argument, however, the Judges were very clear that they believed the Tax Court judge committed error.

[4] The Government also has indicated in a related case that it considers state legal sale of marijuana a federal crime and that with the rescission of the *Cole* and *Ogden* memos, it is now taking a policy position of criminal enforcement.  See Exhibit 13 Attached hereto.

6

Section 7602 to obtain information which could be a significant "link in the chain". *Id.; see also, Fla. Dep't of Revenue v. Herre,* 634 So. 2d 618 (Fl. S.Ct. 1994). The Government may contend that the IRS sharing of information is limited to only when the Department of Justice can obtain a court order after a showing of probable cause. The Tenth Circuit disagrees:

> "26 U.S.C. § 6103(i)(3) allows the IRS to disclose return information which may constitute evidence of a violation of federal criminal law. See also 26 U.S.C. § 6103(i)(1), (2). Moreover, such information may be introduced as evidence in administrative or judicial proceedings. 26 U.S.C. § 6103(i)(4)."

*United States v. One Coin-Operated Gaming Device,* 648 F.2d 1297, 1300 (10th Cir. 1981)

Therefore, if the Government is successful in asserting that the IRS has the authority to obtain this information, and share with law enforcement, Section 280E is unconstitutional. *Id.; Marchetti v. United States*, 390 U.S. 39 (1968)

These summonses involve both individuals and entities for which Fifth Amendment applies. The fact that the entity tax returns are filed under penalty perjury by an individual certainly brings the Fifth Amendment into play. See, *Department of Revenue v. Herre*, 634 So. 2d 618 (Fla. 1994)(Tax returns are signed under penalty of perjury by an individual implicating Fifth Amendment).

**D.    Expectation of Privacy**

The Government claims that the Petitioners have no expectation of privacy in the MED information. This is not the case. The reason for the confidentiality provisions is to protect Fifth Amendment Privilege. Such statutes have an expectation of privacy attached because of the forced disclosure of drug law crimes. See NOTE: TAXATION OF ILLEGAL NARCOTICS: A VIOLATION OF FIFTH AMENDMENT RIGHTS OR AN INNOVATIVE TOOL IN THE WAR AGAINST DRUGS?, 11 St. John's J.L. Comm. 747. This privacy is demonstrated by C.R.S. 12-43.4.202(1)(d) where MED must maintain the confidentiality of reports or other

7

information obtained from a licensee. Thus, the Petitioners have an expectation of privacy in their data. The information of criminal conduct is compelled. The Government's analogizing the MED records to bank statements is apples to oranges.

Also, since this MED statute is designed to protect Fifth Amendment privilege, the MED statute is an immunity statute. *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965). An immunity statute provides "complete protection from all the perils against which the [Fifth Amendment] constitutional prohibition was designed to guard by affording absolute immunity from future prosecution for the offense to which the question relates." *Id.* Given the Fifth Amendment protection the state statutes are affording, the federal government must also afford the same protection. *Murphey v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52 (1964). The Government refuses to do so. It is an improper purpose to seek the incriminating information which is constitutionally protected and refuse to provide absolute immunity.

**E.     The Summonses are Overly Broad**

The MED "reports" are not reports of financial transactions but of plant tracking.

> "When the IRS seeks actual records of potentially taxable transactions from a taxpayer or from a third party, relevancy is implicit and production is usually required; where the data sought are not records of transactions the courts are prone to press the Service to a higher standard of relevance."

*United States v. Coopers & Lybrand*, 413 F. Supp. 942, 950 (D. Colo. 1975), *aff'd* 550 F.2d 615 (10th Cir. 1977)

In this case, the Summons to MED seeks "harvest reports" and "monthly plants inventory reports". The Government does not explain any relevance for these documents. The swath is broad indeed and exceedingly vague. The Government does not explain why it needs this non-taxable-transaction information. As a result, this request if overbroad**.**

8

For the same reasons, the Government's request to convert the summons into a request for the entire MED database is equally overbroad.  It would cover thousands of licensees and most likely millions of records which would have little to no relevance to the audit at issue.  Of course, the Government would like these records given its veiled threats to criminally prosecute all the licensees.

To the extent that the Government claims that the entire database of those under investigation is what it demands, that request is also overbroad.  The summonses seek specific "reports" of specific information.  To convert the summons to a request for the entire database of the Petitioners, without any claim of relevancy, would convert the summons into the prohibited "fishing expedition".  *Id.*

WHEREFORE, the Petitioners request that the Court DENY the Motion to Dismiss and Motion to Enforce Summonses, and allow the matter to proceed including allowing discovery on the factual issues.

**DATED**: June 11, 2018                                Respectfully submitted,


                                                    THORBURN WALKER, LLC

                                                   */s/ James D. Thorburn*
                                                   James D. Thorburn
                                                   Attorney for the Petitioners
                                                   5460 South Quebec Street, Suite 310
                                                   Greenwood Village, CO 80111
                                                   (303) 646-3482
                                                   jthorburn@thorburnwalker.com

                                                   */s/ Richard Walker*
                                                   Richard Walker
                                                   Attorney for the Petitioners
                                                   5460 South Quebec Street, Suite 310
                                                   Greenwood Village, CO 80111
                                                   (303) 646-3482
                                                   rwalker@thorburnwalker.com

CERTIFICATE OF SERVICE

      I hereby certify that on June 11, 2018 I electronically filed the above and foregoing using the CM/ECF system which will send notification to the following email address:

Charles J. Butler
Trial Attorney, Tax Division
U. S. Department of Justice
P.O. Box 683
Washington, DC 20044

*s/ James D. Thorburn*