IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-mc-00031-PAB

MEDICINAL WELLNESS CENTER, LLC, a
Colorado Limited Liability Company;
MEDICINAL OASIS, LLC, a Colorado Limited
Liability Company; MICHAEL ARAGON; JUDY
ARAGON; and STEVEN HICKOX,

       Petitioners,

       v.

UNITED STATES OF AMERICA,

       Respondent.

**UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED PETITION
AND ENFORCE SUMMONSES**

The United States replies to Petitioners' response to the United States' motion. In their response, Petitioners contend the following:

- before the Court can enforce the summonses to Colorado's Marijuana Enforcement Division ("MED"), the United States must explain why the IRS has initiated the audits at issue not only in this action but also in the numerous similar actions Petitioners' counsel have brought;

- Petitioners would face a "hazard of self-incrimination" if MED – a third party – must comply with the summonses;

- Petitioners have a legitimate expectation of privacy in information they voluntarily provided to that third party; and

- the summonses are overly broad because they seek what Petitioners characterize as "non-taxable-transaction information" as well as "the entire MED database."

In addition, Petitioners claim that the proper standard on the United States' motion is that for summary judgment.

1

Each of these arguments is farcical. First, as this Court has made clear, the proper standard on this motion is that articulated in *United States v. Powell*, 379 U.S. 48 (1964). *See Rifle Remedies, LLC v. United States*, No. 1:17-mc-00062-RM, 2017 WL 6021421, at *1 & n.1 (D. Colo. Oct. 26, 2017) (the proper standard on a motion to dismiss petition and enforce summons is that under "*Powell* and the Tenth Circuit's application of that decision"). Contrary to Petitioners' assertions, "traditional summary judgment standards" do not apply in summons cases. *Villareal v. United States*, 524 Fed Appx. 419, 423 (10th Cir. 2013). Rather, the taxpayer must "make a substantial preliminary showing before even limited discovery need be ordered." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1445 (10th Cir. 1985).

As stated in its opening brief, the United States, through Revenue Agent Tyler Pringle's declaration, has made a *prima facie* showing of the summonses' validity based on the four *Powell* factors. Petitioners' arguments in their Amended Petition have failed to meet their burden of overcoming this *prima facie* showing. Petitioners' response arguments likewise fail to meet their burden for the following reasons: (1) rank speculation does not constitute the factual support necessary for their petition to prevail; (2) they have stated nothing to indicate that a Fifth Amendment interest exists; (3) there is no expectation of privacy in information voluntarily provided to a third party; and (4) the information the summonses seek is relevant to Petitioners' income and expenses and does not require MED to make an unreasonable production.

## DISCUSSION

**1.      Petitioners' speculation does not constitute the specific factual support necessary to justify an evidentiary hearing, much less preclude enforcement of the summonses.**

Petitioners' response attempts to turn baseless speculation regarding the "true" purpose of the IRS summonses into grounds for quashing them. Petitioners go so far as to contend that, before the Court can enforce the summonses in this action, the United States must explain why

the IRS has initiated the audits at issue not only in this action but in the numerous similar actions Petitioners' counsel have brought.  First, Petitioners cite no authority that requires the United States to explain what triggered IRS audits not at issue in this case.  Second, in this and every similar action, the United States has made clear, based on the sworn declaration of the Revenue Agent who issued the relevant summonses, that the summonses' purpose is to obtain information concerning each petitioner's income and expenses to determine that petitioner's correct tax liability.  Petitioners' baseless speculation cannot overcome this sworn testimony, justify an evidentiary hearing, or preclude enforcement of the summonses.

A taxpayer may examine an IRS agent in an evidentiary hearing only where he can "point to specific facts or circumstances plausibly raising an inference of bad faith.  *Naked allegations of improper purpose are not enough*: The taxpayer must offer some credible evidence supporting his charge." *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014) (emphasis added).  Likewise, the Tenth Circuit has stated that if a party resisting enforcement of an IRS summons cannot refute the United States' *prima facie Powell* showing through specific factual allegations, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing" because holding such a hearing "would be a waste of judicial time and resources." *Balanced Fin. Mgmt.*, 769 F.2d at 1444.

Petitioners offer no factual support for their claims that the summonses' purpose is anything other than what the United States has stated or that the IRS otherwise issued the summonses in bad faith.  The IRS's actions that Petitioners paint as suspicious – initiating audits, issuing summonses for inventory information provided to MED, and not making criminal referrals – are consistent with efforts to apply a unique tax law to a relatively new and largely cash-based industry.  These circumstances do not support Petitioners' fanciful speculation that

3

the DEA has coopted the IRS to do its work. Such a theory runs counter to common sense when it would be simple for criminal investigators to document Petitioners' conspicuous business activities without resorting to the work of an IRS audit.

Under Supreme Court and Tenth Circuit authority, therefore, the Court should reject Petitioners' claims, as this Court already has done in a similar case where the petitioners made similar claims. *See Green Solution Retail, Inc. v. United States*, No. 16-mc-00137-PAB, 2018 WL 1305449, at *3-4 (D. Colo. Feb. 12, 2018) ("Because plaintiffs have not presented factual support for their claims that the IRS is not acting in good faith, the Court finds that plaintiffs have not met their burden and will enforce the summonses."); *see also Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D. Colo. Dec. 1, 2016) (rejecting the petitioners' "attempt to manufacture a criminal prosecution against themselves, [by] asserting that enforcement of § 280E amounts to such a prosecution").

**2.     Petitioners have stated nothing to indicate that a Fifth Amendment interest exists.**

Petitioners' claims regarding Fifth Amendment protections fail as well. Petitioners cite no facts or authority indicating that a Fifth Amendment interest exists here.

First, Petitioners distort what the United States has said about disclosures the IRS can make under the taxpayer privacy statute, 26 U.S.C. § 6103. To be clear, in another case, the United States explained that under § 6103(i)(1), the IRS can disclose taxpayer information to other federal agencies for use in criminal investigations, but only in limited circumstances. Before the IRS can do so, for instance, the Department of Justice must seek a federal court order which may be granted only if, among other requirements, the information sought to be disclosed cannot be obtained from another source. *See* § 6103(i)(1)(B). Obviously, any information pertaining to Petitioners' trafficking in a controlled substance can be obtained from several other

4

sources, including their own websites and dispensary.

In this case, Petitioners have focused on § 6103(i)(3), a different subsection of the taxpayer privacy statute.  The United States explained in its opening brief that this subsection allows only the disclosure of information obtained from third parties, not the taxpayer, that may constitute evidence of a significant criminal law violation.  Any such disclosure of third-party information would not implicate the taxpayer's Fifth Amendment privilege.

Contrary to Petitioners' assertion, therefore, § 6103 does not implicate a Fifth Amendment interest in this or any other case.  Petitioners likewise state nothing to demonstrate that either the provisions of § 280E or the summonses in question implicate a Fifth Amendment interest.  Rather, to support their arguments, Petitioners continue to rely on inapposite cases, such as *United States v. One Coin-Operated Gaming Device*, 648 F.2d 1297 (10th Cir. 1982).  In that case, the Tenth Circuit addressed a challenge to the IRS's seizure of slot machines for which the owner had refused to pay the federal gaming machine tax.  The court held that the IRS's seizure was not proper because paying the tax would have incriminated the owner.

In relying on this case, Petitioners ignore key facts that distinguish the statute at issue there from § 280E.  The statute in *One Coin-Operated* required slot machine owners to pay a special tax with respect to activity that was illegal at the time in virtually every jurisdiction in the country.  *See* 648 F.2d at 1300.  In contrast, § 280E does not impose any tax, or other reporting, requirement.  It simply disallows certain deductions.  Taxpayers are not required to take deductions, which, the Tenth Circuit has made clear, "are not a matter of right." *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017).

Petitioners also cite *One Coin-Operated* to suggest that the information § 280E would force them to provide would constitute a significant "link in a chain" of evidence to establish

5

their guilt of violating federal criminal drug laws. Apart from the fact that § 280E would not force Petitioners to divulge any information, this argument is silly considering that Petitioners' websites and dispensary make abundantly clear that Petitioners sell marijuana.

Nevertheless, Petitioners likewise cite *Florida Dep't of Revenue v. Herre*, 634 So. 2d 618 (Fla. 1994), to suggest that simply signing a tax return for an entity forms a "link in the chain" of incriminating evidence and thus implicates the Fifth Amendment. Under relevant federal case law, however, signing a tax return does not implicate the Fifth Amendment.[1] *See, e.g., Betz v. United States*, 753 F.2d 834, 835 (10th Cir. 1983) ("It is well settled that the Fifth Amendment general objection to filing a proper tax return is not a valid claim of the constitutional privilege," which must be asserted as to specific items of information.); *United States v. MacLeod*, 436 F.2d 947, 951 (8th Cir.) ("The statutory requirement to file an income tax return does not violate a taxpayer's right against self-incrimination."), *cert. denied*, 402 U.S. 907 (1971). In fact, courts of appeals have imposed sanctions for raising this frivolous argument. *See, e.g., Brashier v. Commissioner of Internal Revenue*, 12 Fed. Appx. 698 (10th Cir. 2001); *Gottman v. Commissioner of Internal Revenue*, 230 F.3d 1363 (8th Cir. 2000).[2]

The authority on which Petitioners rely thus fails to support their argument that a Fifth Amendment interest exists here.

3.  **Petitioners' claim that they have an expectation of privacy in information they voluntarily provided to a third party runs contrary to law and is otherwise senseless.**

Likewise, the authority Petitioners cite to support their argument that they have an

---

[1] To the extent *Herre* states otherwise, federal law preempts it.

[2] In addition, Petitioners have waived any Fifth Amendment argument with respect to information stated on their tax returns (or information provided to third parties) by voluntarily providing that information and not claiming any Fifth Amendment protection, in the first instance, with respect to specific items on the return. The Fifth Amendment protects against only *compelled* self-incriminating testimony. It does not protect those who submit tax returns that voluntarily claim optional deductions.

expectation of privacy in the information they provided to MED is inapposite.  Rather, the relevant authority undermines Petitioners' argument.

In their response, Petitioners attempt to take this argument out of the context of the Fourth Amendment, which is how they presented it in the Amended Petition, and transform it into a Fifth Amendment argument.  They contend that the purpose of the Colorado statute (C.R.S. § 12-43.3-202(1)(d)) providing that MED should maintain the confidentiality of marijuana licensees' information is to protect the licensees' Fifth Amendment rights, given the "forced disclosure of drug law crimes."  Dkt. 16, at 7.  According to Petitioners, therefore, the state statute bestows on licensees an expectation of privacy, presumably for Fourth Amendment purposes, in the information they provide to MED.

This argument is baseless and makes no sense.  First, the Colorado statute on its face simply indicates that MED must maintain the confidentiality of the business information supplied to it.  Petitioners have pointed to nothing demonstrating that the statute has some further purpose.  Second, the marijuana activity in which Petitioners engage is generally legal under Colorado law.  There thus appears to be no state criminal violation at issue.  Third, regardless of the state statute's purpose, Petitioners have cited no authority indicating that such a statute can establish a reasonable expectation of privacy for Fourth Amendment purposes.[3]  To the contrary, established law makes clear that where a person provides information to a third party, the person has no reasonable expectation of privacy in that information, even if the third party commits to protecting its confidentiality.  *See United States v. Miller*, 425 U.S. 435, 443 (1976); *Pleasant v. Lovell*, 974 F.2d 1222, 1230 (10th Cir. 1992).

---

[3] The only "authority" Petitioners cite to support this proposition is a law student note from 1996 published in the Saint John's Journal of Legal Commentary.  That note, however, does not assert that a state confidentiality statute can establish a reasonable expectation of privacy or otherwise cite authority that supports this proposition.

7

In this same vein, Petitioners also assert that the same Colorado statute is an "immunity statute." According to Petitioners, as an "immunity statute," the state statute provides protection from self-incrimination with respect to information provided to MED. Petitioners cite *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70 (1965), to support this argument. In *Albertson*, the Supreme Court held that the federal Subversive Activities Control Board's requirement that members of the Communist Party register with the federal government violated their privilege against self-incrimination. *Id.* at 77-78. In doing so, the Court disagreed with the Board's contention that a provision of the relevant statute obviated the Fifth Amendment issue by providing immunity from prosecution. The Court stated that the provision did not provide "complete protection from all the perils against which the constitutional prohibition was designed to guard by affording 'absolute immunity against future prosecution for the offence to which the question relates.'" *Id.* at 80 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 585-86 (1892)). The purported "immunity provision" thus did not cure the Fifth Amendment issue. *Id.*

Petitioners assert that this quote from *Albertson* means that the Colorado statute is an "immunity statute" that provides them immunity from prosecution from criminal drug laws. Not only is this reading of the *Albertson* quote disconnected from the issue the quote actually addresses, it makes no sense given, again, that the activity at issue here is legal under Colorado law. Yet Petitioners stretch their theory even further, asserting that because the state law provides this purported protection, the United States "must also afford the same protection" to Petitioners. Dkt. 16, at 8.

To support this claim, Petitioners cite *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964). In *Murphy*, the Supreme Court held that the privilege against self-incrimination protects a state witness against incrimination under both federal and state law and a

8

federal witness against incrimination under both state and federal law. *Id.* at 79. The *Murphy* holding, however, does not apply here because, again, the Colorado law does not provide immunity from prosecution for violating state law given that the activity at issue does not violate state law. Accordingly, there exists no state law grant of immunity for any disclosure Petitioners made to the state that would apply to the same disclosure that Petitioners might make to the federal government. Moreover, as explained above, Petitioners are not being forced to disclose anything in this case. Rather, the summonses to MED seek information that Petitioners voluntarily provided to a third party.[4]

Petitioners thus state nothing to support their arguments that either § 280E or the summonses at issue violate any of their constitutional rights.

**4.     The information the summonses seek is relevant to Petitioners' income and expenses and does not require MED to make an unreasonable production.**

Finally, Petitioners contend that the IRS summonses to MED are overly broad. The summonses, however, state the specific information sought, which directly relates to Petitioners' income and expenses, and would not require MED to make an unreasonable production.

The summonses specifically seek annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports. On their face, therefore, the summonses do not seek "the entire MED database," as Petitioners assert. Petitioners also assert that the information sought constitutes "non-taxable-transaction information," which also supposedly makes the summonses overly broad. To support that assertion, Petitioners rely on the following

---

[4] Even if Petitioners were correct, which they are not, that Colorado's confidentiality statute serves as an "immunity statute," a state law cannot provide immunity for a federal crime. Such a state law would negate, in this case, the federal Controlled Substances Act, which would therefore preempt the state law. *See Butler v. Douglas County*, No. 07-civ-6241, 2010 WL 3220199, at *4 n.3 (D. Or. Aug. 10, 2010) ("State law simply cannot negate federal law. Plaintiffs do not and cannot contend that [the Oregon Medical Marijuana Act] permits medical use of marijuana under federal law or that it provides immunity from federal prosecution."), *aff'd*, 457 Fed. Appx. 674 (9th Cir. 2011).

9

quote from *United States v. Coopers & Lybrand*, 413 F. Supp. 942, 950 (D. Colo. 1975):

> When the IRS seeks actual records of potentially taxable transactions from a taxpayer or from a third party, relevancy is implicit and production is usually required; where the data sought are not records of transactions the courts are prone to press the Service to a higher standard of relevance.

What Petitioners fail to point out is that this Court in *Coopers & Lybrand* went on to state that it considered "the data which customarily are maintained in support of company transactions" the same as "potentially taxable transactions" for which "production is usually required." *Id.*

In this case, the summonses seek data customarily maintained in support of Petitioners' companies' transactions. Gross sales reports, transfer reports, harvest reports, and plant inventory reports reflect the transactions Petitioners' marijuana dispensaries conducted. With respect to Petitioners' federal taxes, this information can assist in verifying gross receipts, claimed expenses, and thus determinations on costs of goods sold. Given the provisions of § 280E, marijuana businesses may offset gross receipts only with the cost of goods sold. *See, e.g.*, *Olive v. Commissioner*, 139 T.C. 19, 32-36 (2012), *aff'd*, 792 F.3d 1146 (9th Cir. 2015). Inventory figures from the reports sought factor into these computations by illustrating how much product the business sold and when. In a business where exact sales may be difficult to track due to its cash-based nature, inventory data can be critical in establishing accurate income and costs.

Contrary to Petitioners' assertions, therefore, the summonses to MED plainly seek specific information that relates directly to Petitioners' income and expenses. Petitioners have pointed to no reason that MED should not, or could not, produce this information.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the Amended Petition and enter an Order enforcing the summonses at issue.

Dated:  June 26, 2018

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044

*Of Counsel:*
ROBERT C. TROYER
United States Attorney

*Attorneys for United States of America*

CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

James David Thorburn (jthorburn@thorburnwalker.com)
Richard Allan Walker (rwalker@thorburnwalker.com)
Thorburn Walker LLC
5460 South Quebec Street, Suite 330
Greenwood Village, Colorado 80111

*Counsel for Petitioners*

                                            */s/ Charles J. Butler*
                                            CHARLES J. BUTLER
                                            Trial Attorney, Tax Division
                                            U.S. Department of Justice